IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

ADRIAN MULDROW,

    Plaintiff,

    v.                     CIVIL NO.: WDQ-11-0519

SCHMIDT BAKING COMPANY, INC.,
et al.,

    Defendants.

MEMORANDUM OPINION

Adrian Muldrow sued Schmidt Baking Company, Inc. ("Schmidt") and Two Farms, Inc., d/b/a Royal Farms Store ("Royal Farms") for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq., and related claims. For the following reasons, Schmidt's motion to dismiss Counts IV-VII will be granted in part, and denied in part.

I. Background[1]

On March 3, 2006, Schmidt hired Muldrow as "general help." Compl. ¶ 10. He was promoted to "route salesman" on February 12, 2007. Id. On May 4, 2010, Muldrow stopped at Royal Farms Store No. 15 in Essex, Maryland. Id. ¶ 11. While he was conducting his "routine maintenance of the Schmidt displays," he

---

[1] For the motion to dismiss, the well-pled allegations in Muldrow's complaint are accepted as true. See Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

was approached by the store's white, female manager. *Id.* The manager, who was "aggressive and disrespectful," gave Muldrow a "menacing look" and asked in a "snarling tone . . . who he was and why he was there." *Id.* Muldrow, who was in uniform, told her that he was a Schmidt employee conducting inventory and asked her to "check-in the inventory, sign his invoice, and kindly assist with his purchase of a money order so that he [could] continue to his next stop." *Id.* ¶ 12.

When Muldrow attempted to hand the manager an invoice ticket, "she snatched [it] from him" and "exploded in a very loud and embarrassing tone, 'Who the fuck does this *Nigger* think he's talking to, I'm not checking in this *Nigger*.'" *Id.* ¶¶ 13-14 (emphasis in original). Muldrow, who was "[c]ompletely shocked and in disbelief," asked the manager to repeat what she had said. *Id.* ¶ 15. The manager loudly repeated "I'm not checking in this *Nigger*," and walked away, refusing to help Muldrow with the inventory. *Id.* ¶¶ 14-15 (emphasis in original).

Muldrow waited about 10 minutes for another employee to assist him. *Id.* ¶ 16. That employee gave Muldrow the telephone number for Royal Farms's corporate headquarters so he could complain. *Id.* ¶ 16. At 10:08 a.m., Muldrow returned to his truck and called his supervisor, Jodie Sprenkle. *Id.* ¶ 17. She provided no advice. *Id.* Muldrow also called his route

supervisor, Mike Halager, to report the incident, and contacted Royal Farms to "officially register his complaint." *Id.* ¶¶ 18-19. Royal Farms "inquired [about] what happened and requested [Muldrow's] employer's information." *Id.* ¶ 20.

At about noon, Muldrow received a call from Richard Lewis, his union shop steward, advising him that he had been suspended. *Id.* ¶ 21. Lewis told Muldrow that he had been suspended because "he called Royal Farms headquarters to register a racial discrimination complaint" and "as a result, Royal Farms called . . . Schmidt's corporate headquarters, and requested that [Muldrow] not return to the store." *Id.* ¶ 22.

That evening, Muldrow and Lewis met with Sprenkle at the Schmidt depot. *Id.* ¶ 23. Lewis asked why Muldrow had been suspended. *Id.* ¶ 24. Sprenkle replied "I don't know why, it came from corporate, if it were up to me we wouldn't be sitting here." *Id.* ¶ 24. She also stated that Muldrow's complaint "started a forest fire around the office." *Id.* ¶ 24. Sprenkle called Sharon Crispens, Schmidt's human resources director, about the suspension. *Id.* ¶ 25. Muldrow overheard Crispens say "I don't know, find something." *Id.* Sprenkle then asked Muldrow and Lewis to leave her office so that she could privately speak with Crispens. *Id.* ¶ 26.

When Muldrow later called Crispens, she "was evasive" about "how to handle the matter" and "within two hours of the

conversation, [Muldrow] received a write-up indicating that he was suspended pending termination." *Id.* ¶ 27. On May 6, 2010, Muldrow filed an EEOC complaint about his suspension. *Id.* ¶ 29. On May 17, 2010, Schmidt terminated Muldrow. *Id.* ¶ 30. His routes were assigned to Scott Khulman, a white employee who had previously worked as a "jumper/floater" and "did not have a steady route because he was unreliable" and "would[] [not] complete his routes on time." *Id.*

On February 25, 2011, Muldrow sued the Defendants for violations of Title VII and related claims. ECF No. 1. On April 14, 2011, Schmidt moved to dismiss Counts IV-VII of the complaint. ECF No. 9.[2]

II. Analysis

A. Standard of Review

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader

---

[2] Schmidt does not seek dismissal of Muldrow's claims for discrimination and retaliation in violation of Title VII or his claim under 42 U.S.C. § 1981.

4

is entitled to relief." *Midgal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)(*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 1950. "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted).

B. Schmidt's Motion

1. Hostile Work Environment Claim

Count IV alleges that Schmidt violated Title VII by creating a hostile work environment based on Muldrow's race.

5

Schmidt argues that this claim must be dismissed because the single incident on which it is based is insufficient to show a hostile work environment. Def.'s Mot. to Dismiss 5. Muldrow contends that the incident was sufficiently severe to support his claim, and Schmidt is liable for that incident. Pl.'s Opp'n 5-9.

To state a claim for hostile work environment under Title VII, the plaintiff must show that: (1) he was subjected to unwelcome harassment, (2) the harassment was based on his race, (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere, and (4) there is some basis for imposing liability on the employer. *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998).

To show severe or pervasive harassment, the plaintiff must demonstrate that the alleged conduct created an environment he subjectively perceived as abusive, and also that the workplace was "objectively hostile or abusive." *Daso v. Grafton Sch., Inc.*, 181 F. Supp. 2d 485, 491 (D. Md. 2002). Isolated incidents generally do not show an objectively hostile work environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). But if a single incident is "extremely serious," it may be sufficient to state a claim. *See id.*[3]

---

[3] *See also Ferris v. Delta Air Lines, Inc.*, 277 F.3d 128, 136 (2d Cir. 2001) ("Although a continuing pattern of hostile or

"[I]n the case of racial and ethnic slurs, some words are so outrageous that a single incident might qualify for a hostile environment claim." *Ezell v. Potter*, 400 F.3d 1041, 1048 (7th Cir. 2005). The incident alleged in Muldrow's complaint is more than a merely "offensive utterance" or offhand remark. Rather, it was an unambiguously racial epithet,[4] directed at Muldrow more than once, "in a very loud and embarrassing tone." Compl. ¶¶ 14. Muldrow also alleges that the manager was aggressive and snarling, suggesting that the incident was threatening, and that she refused to help him complete his inventory, thereby "interfer[ing] with [his] work performance." *Lacy*, 205 F.3d at 1333. At this stage of the litigation, Muldrow's allegations are sufficient to show that the single incident may have been serious enough to create an objectively abusive work environment.[5]

---

abusive behavior is ordinarily required to establish a hostile environment, a single instance can suffice when it is sufficiently egregious"). Courts consider the "totality of the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Lacy v. Amtrak*, 205 F.3d 1333 (4th Cir. 2000).

[4] *See Cerros v. Steel Techs., Inc.*, 298 F.3d 944, 950-51 (7th Cir. 2005)("we have recognized before that an unambiguously racial epithet falls on the 'more severe' end of the spectrum.").

[5] *Cf. Exantus v. Harbor Bar & Brasserie Restaurant*, 386 Fed. Appx. 352, 354 (3d Cir. 2010)(racial slurs were not sufficient

7

Muldrow has also alleged a basis for imputing liability for the Royal Farms's employee to Schmidt. Although the Fourth Circuit has not addressed whether an employer may be liable under Title VII for the harassing conduct of non-employees, "[o]ther Circuits to address the issue have adopted a negligence standard, finding that an employer can be liable if it took no steps to protect its employees and if it had actual or constructive knowledge of the situation." *EEOC v. Cromer Food Servs., Inc.*, 2011 WL 733814, at *4 (4th Cir. Mar. 3, 2011). Here, Muldrow has alleged that he promptly informed two of his supervisors of the harassment, and that instead of taking corrective action, Schmidt suspended and terminated him. These allegations are sufficient to show Schmidt's potential liability.[6] The motion to dismiss Count IV will be denied.

2. Wrongful Termination Claim

Count V alleges a tort action for wrongful termination. Schmidt argues that Count V should be dismissed because other civil remedies are available to Muldrow. Def.'s Mot. to Dismiss

---

to show hostile environment when they did not "interfere[] with [the plaintiff's] ability to do his work" and the plaintiff did not "assert that he was physically threatened by the comments").

[6] *Galdamez v. Potter*, 415 F.3d 1015, 1022 (9th Cir. 2005)(employer can be liable for third parties if it ratifies their actions by failing to act); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 767 (2d Cir. 1998)(employer is generally not liable for non-employee conduct unless employer provided no reasonable avenue of complaint or knew of the harassment but failed to address it).

10. Muldrow contends that his Title VII claims are not an alternate civil remedy, because Count V is not based on discrimination but "is alleging that there is a clear mandate of public policy that allows citizens to aggrieve egregious customer service and/or lack of professionalism of staff by complaining to the corporate headquarters of a business." Pl.'s Opp'n 12-14.

The tort of wrongful discharge addresses, and provides a remedy for, "particularly reprehensible conduct . . . when no other remedy is available." *Porterfield v. Mascari II, Inc.*, 374 Md. 402, 413, 823 A.2d 590 (2003). To state a wrongful discharge claim, Muldrow must show: "(1) that [he] was discharged; (2) that the dismissal violated some clear mandate of public policy; and (3) that there is a nexus between the defendant and the decision to fire [him]." *Shapiro v. Massengill*, 105 Md. App. 743, 764, 661 A.2d 202 (Md. Ct. Spec. App. 1995).

To show the second element, an employee must demonstrate the public policy with "clarity, specificity, and authority." *Id.* To support a wrongful discharge claim, the policy must be "sufficiently established" by "a preexisting, unambiguous, and particularized pronouncement, by constitution, enhancement, or prior judicial decision directing, prohibiting, or protecting the conduct in question so as to make [it] not a matter of

conjecture or even interpretation." *King v. Marriott Int'l Inc.*, 160 Md. App. 689, 702, 866 A.2d 895 (Md. Ct. Spec. App. 2005).

Muldrow argues that (1) the Baltimore City Code, (2) a publication from the Maryland State Attorney General's Office of Consumer Protection, (3) Royal Farms's corporate policy, (4) the First Amendment, and (5) Article 40 of the Maryland Declaration of Rights reflect the "clear . . . policy" that citizens should be protected when complaining about "egregious customer service and/or lack of professionalism." Pl.'s Opp'n 16.

The Baltimore City Code, Office of Consumer Protection publication, and Royal Farms's corporate policy are not sources of public policy for the purposes of a wrongful discharge claim. *See King*, 160 Md. App. at 702; *Kramer v. Mayor & City Council*, 124 Md. App. 616, 634, 723 A.2d 529 (Md. Ct. Spec. App. 1999)(only state statutes, not city charter provisions, support a showing of public policy). Article 40 and the First Amendment also do not support Muldrow's claim because when government action is not involved, "an employee who has been discharged or disciplined may not assert a claim for violation of the right to speak freely." *McIntyre v. Guild, Inc.*, 105 Md. App. 332, 348,

659 A.2d 398 (Md. Ct. Spec. App. 1995). Accordingly, Schmidt's motion to dismiss the wrongful discharge claim will be granted.[7]

3. Conspiracy to Interfere with Civil Rights Claim

Count VII is a claim for unlawful conspiracy to deprive civil rights under 42 U.S.C. § 1985(3); this statute applies to private parties only in narrow circumstances. *Griffin v. Breckenridge*, 403 U.S. 88, 101-02 (1971). To state a § 1985(3) private conspiracy claim, the plaintiff must allege a conspiracy (1) motivated by racial or other class-based invidious discrimination, (2) to deprive him of the equal enjoyment of rights secured to all by federal law. *Ward v. Coastal Carolina Health Care, P.A.*, 597 F. Supp. 2d 567, 571-72 (E.D.N.C. 2009).

The Supreme Court has held that the deprivation of a right created by Title VII cannot be the basis for a § 1985(3) conspiracy claim against a private employer. *Great American Fed. Savings & Loan Assoc. v. Novotny*, 442 U.S. 366, 370 (1979); *see also Hughes v. Bedsole*, 48 F.3d 1376, 1383 n. 6 (4th Cir. 1995). Muldrow's complaint alleges that the Defendants conspired to "deprive [him] of the equal enjoyment of his rights secured by law . . . to be free from racially motivated discrimination within the workplace." Compl. ¶ 56. This right,

---

[7] Because Count VI, Muldrow's claim for civil conspiracy under Maryland law, is based on Count V, it will also be dismissed.

11

created by Title VII, cannot be the basis for Muldrow's § 1985 (3) conspiracy. Accordingly, Count VII will be dismissed.

III. Conclusion

For the reasons stated above, Schmidt's motion to dismiss Counts IV-VII will be granted in part, and denied in part.

| | |
|---|---|
| 6/29/11 | _/s/_ |
| Date | William D. Quarles, Jr.<br>United States District Judge |